I respectfully dissent from that portion of the opinion affirming the summary judgment *Page 1230 on the issue of false imprisonment. The majority holds, in effect, that a custodial parent has an absolute right to have a 17-year-old minor child admitted into a private psychiatric hospital against her will and without her consent. Such was not the law in this state, nor, to my knowledge, in any other state, until today. An understanding of the import of this decision requires a fuller exposition of the facts than has been provided to us by the majority.
While a student at Homewood High School in the fall of 1984, R.J.D. began associating with a man who was her senior by some seven years. Her mother attempted to stop the association. On November 17, 1984, allegedly to resolve the conflict with her mother, R.J.D. voluntarily entered Hillcrest Hospital for drug screening and underwent "psychotherapeutic" treatment and counselling under the supervision of Dr. S. David Morrison. On November 21, Hillcrest released R.J.D. with a recommendation of no medication and no follow-up.
On the day of her release, R.J.D. was escorted by Mrs. D. and her private investigators to Brookwood Hospital for an interview with another psychiatrist. Immediately after that interview, R.J.D. was escorted to the Jefferson County Family Court for a hearing on her need for psychiatric treatment. The court appointed Raymond Chambliss as R.J.D.'s guardian ad litem in the matter, and the hearing was held before a referee. At the conclusion of the hearing, the referee, also recommending no treatment, released R.J.D.
However, immediately after the hearing, Mrs. D. and her private investigators escorted R.J.D. to Children's Hospital. Dr. Gary Grayson, with knowledge of the proceedings just concluded in the family court, and over R.J.D.'s objections, admitted her for treatment. During her stay in Children's Hospital, R.J.D. was placed in a "secure ward," with restricted access to a telephone. R.J.D. alleges that when she asked how long she would have to remain at the hospital, she was told that she would stay as "long as someone was footing the bill."
Mr. Chambliss, the court-appointed guardian ad litem, visited the hospital and attempted to speak with R.J.D. However, hospital officials not only refused to allow him to speak with his client but also refused to supply him with any information concerning her status. On December 5, 1984, she escaped with her father through means of a ruse, and she later commenced this suit.
An action based on false imprisonment will lie whenever one is unwillingly subjected to a "restraint upon [his] freedom . . . without proper legal authority." W. Keeton, D. Dobbs, R. Keeton D. Owen, Prosser and Keeton on the Law of Torts § 11 (5th ed. 1984) (emphasis added). Thus, one who restrains another does so at his own peril. Id. The good faith of the defendant is not a defense to a false imprisonment claim where the restraint is eventually found to have been without sufficient authority. Id. See also Nesmith v. Alford,318 F.2d 110 (5th Cir. 1963), cert. denied, 375 U.S. 975 (1964); Danielsv. Milstead, 221 Ala. 353, 128 So. 447 (1930).
As a general rule, decisions regarding medical or psychiatric treatment of minor children are the responsibility of the parents. H. Clark, The Law of Domestic Relations in the UnitedStates § 9.3 (2d ed. 1988). Nevertheless, the "general principle is obviously not absolute even where the child is not capable of making a decision about his own treatment. It is limited by the power of the state to intercede for the protection of the child's health, safety or welfare." Id.
(Emphasis added.) Indeed, the state, as parens patriae, holds an inherent and substantial interest in the welfare and protection of its minors. Through this interest, the authority of the state often supersedes that of all others, including that of the parents. See generally Areen, Intervention BetweenParent and Child: A Reappraisal of the State's Role in ChildNeglect and Abuse Cases, 63 Geo.L.J. 887 (1975). Examples of this power appear in litigation to determine custody and in cases involving allegations of child abuse and neglect. See Comment, When Rights Clash: The Conflict Between a Parent'sRight to Free Exercise of Religion *Page 1231 Versus His Child's Right to Life, 19 Cumb.L.Rev. 585, 586-87 n. 7 (1989) (jurisdictional survey of statutes defining the power of states vis-a-vis parents in matters pertaining to the health, welfare, and medical treatment of minors).
For these same reasons, Alabama requires the appointment of a guardian ad litem to represent a child defendant whenever, as in this case, the interests of the parent "conflict with those of the child." Ala. Code 1975, § 12-15-8(a); see also Ala.R.Civ.P. 17(c). Once the parens patriae power of the state has been invoked and a guardian ad litem has been duly appointed, no party may disregard the action of the state in the very matter that required the appointment. In other words, a child is "absolutely entitled to the benefits" of herguardian ad litem at all times pertinent to the proceedings for which the appointment was made. Ridgeway v. Strickling,442 So.2d 106 (Ala.Civ.App. 1983) (emphasis added); see alsoCitizens Walgreen Drug Agency, Inc. v. Gulf Ins. Co., 282 Ala. 648, 213 So.2d 814 (1968). This is a "non-waivable right . . . of such magnitude that, upon appeal, the supreme court will take notice ex mero motu of the absence of a guardian ad litem for an infant defendant and will reverse the case on that account." Ridgeway, 442 So.2d at 109; see also Hall v.Hall, 280 Ala. 275, 192 So.2d 727 (1966); Doss v. Terry,256 Ala. 218, 54 So.2d 451 (1951).
In this case, the largely undisputed facts reveal that R.J.D. was hurriedly ushered out of the courtroom and involuntarily admitted, despite the fact that a referee had just found no treatment to be necessary. Even more significantly, she was denied access to her guardian ad litem when he attempted to visit her in the hospital in connection with the matter of her need for treatment. Under Alabama law regarding the representation of minor defendants, neither Mrs. D. nor the defendants, acting at her behest, had the authority to place such restrictions on R.J.D. It appears that Mrs. D., in seeking a place in which to incarcerate her daughter, had, at last, found these defendants who were willing to serve as collaborators in R.J.D.'s improper restraint.
Summary judgment is proper only where it appears that there is "no genuine issue as to any material fact and that themoving party is entitled to a judgment as a matter of law." Ala.R.Civ.P. 56(c) (emphasis added); see also Lolley v. Howell,504 So.2d 253 (Ala. 1987); Cantrell v. City Federal Sav. LoanAss'n, 496 So.2d 746 (Ala. 1986). Under the facts of this case, the defendants are clearly not so entitled; therefore, I would reverse the judgment of the trial court.
At best, the majority opinion will stand merely as an aberration in Alabama law. At worst, it will encourage individuals in the position of these defendants to disregard the interest of this state in the health and welfare of its minors and to flout with impunity judicial authority and legal process. For these reasons, I respectfully dissent in part.
JONES, J., concurs.